JON W. DAVIDSON (*pro hac vice*)
TARA L. BORELLI (*pro hac vice*)
PETER C. RENN (*pro hac vice*)
SHELBI DAY (*pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
3325 Wilshire Boulevard, Suite 1300
Los Angeles, California  90010
Email:  jdavidson@lambdalegal.org
tborelli@lambdalegal.org
prenn@lambdalegal.org
sday@lambdalegal.org
Tel: 213.382.7600 | Fax: 213.351.6050

CARLA CHRISTOFFERSON (*pro hac vice*)
DAWN SESTITO (*pro hac vice*)
MELANIE CRISTOL (*pro hac vice*)
RAHI AZIZI (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071
Email:  cchristofferson@omm.com
dsestito@omm.com
mcristol@omm.com
razizi@omm.com
Tel: 213.430.6000 | Fax:  213.430.6407

KELLY H. DOVE (Nevada Bar No. 10569)
MAREK P. BUTE (Nevada Bar No. 09989)
SNELL & WILMER LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
Email:  kdove@swlaw.com
mbute@swlaw.com
Tel:  702.784.5200 | Fax:  702.784.5252

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BEVERLY SEVCIK and MARY BARANOVICH; ANTIOCO CARRILLO and THEODORE SMALL; KAREN GOODY and KAREN VIBE; FLETCHER WHITWELL and GREG FLAMER; MIKYLA MILLER and KATRINA MILLER; ADELE TERRANOVA and | No. 2:12-CV-00578-RCJ-PAL **PLAINTIFFS' OPPOSITION TO THE COALITION FOR THE PROTECTION OF MARRIAGE'S MOTION TO INTERVENE** |

TARA NEWBERRY; CAREN
CAFFERATA-JENKINS and FARRELL
CAFFERATA-JENKINS; and MEGAN
LANZ and SARA GEIGER,

                Plaintiffs,

     v.

BRIAN SANDOVAL, in his official capacity
as Governor of the State of Nevada; DIANA
ALBA, in her official capacity as Clerk for
Clark County; AMY HARVEY, in her
official capacity as Clerk for Washoe
County; and ALAN GLOVER, in his official
capacity as Clerk-Recorder for Carson City,

                Defendants,

and

THE COALITION FOR THE
PROTECTION OF MARRIAGE,

                Proposed Intervenor.

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................. 2

III.  ARGUMENT ...................................................................................................... 2

      A.    The Coalition's "Marriage Facts" Are Not Pertinent To This Motion. ................... 2

      B.    The Coalition Is Not Entitled to Intervene as a Matter of Right. ............................ 3

            1.    Intervention Is Not Automatic For Initiative Sponsors. ............................... 4

            2.    The Coalition's Only Arguably Protectable Interest In This Litigation
                  Arises From Its Role As The Proponent Of The Constitutional Marriage
                  Ban. ......................................................................................................... 5

            3.    Plaintiffs' Lawsuit May Impair Only The Coalition's Interest As Proponent
                  Of The Constitutional Marriage Ban. ............................................................ 8

            4.    The Coalition's Interests Are Adequately Represented by the State of
                  Nevada. .................................................................................................... 8

      C.    Subject To Certain Limitations, Plaintiffs Do Not Oppose The Coalition's Motion
            To The Extent It Seeks Permissive Intervention. ................................................. 13

IV.   CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003)........................................................................ 5, 6, 8, 9

*Arizonans for Official English (AOE) v. Arizona*,
   520 U.S. 43 (1997) ....................................................................................................... 4

*Bd. of Trustees of Univ. of Ala. v. Garrett*,
   531 U.S. 356 (2001) ..................................................................................................... 6

*Beauregard, Inc. v. Sword Servs., LLC*,
   107 F. 3d 351 (5th Cir. 1997)..................................................................................... 14

*Center for Biological Diversity v. Kempthorne*,
   No. C 08-1339 CW, 2008 WL 4542947 (N.D. Cal. Oct. 2, 2008) .......................... 14

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
   647 F. 3d 893 (9th Cir. 2011)................................................................................. 9, 11

*City of Cleburne, Tex. v. Cleburne Living Center*,
   473 U.S. 432 (1985) ..................................................................................................... 6

*Dep't of Fair Empl. & Hous. v. Lucent Techs, Inc.*,
   642 F.3d 728 (9th Cir. 2011)................................................................................. 13, 14

*Doe v. Schwarzenegger*,
   No. CIV. S-06-2521 LKK/GGH, 2007 U.S. Dist. LEXIS 850 (E.D. Cal. Jan.
   18, 2007) ....................................................................................................................... 9

*Donnelly v. Glickman*,
   159 F. 3d 405 (9th Cir. 1998)...................................................................................... 3

*Edmondson v. Nebraska*,
   383 F.2d 123 (8th Cir. 1986)....................................................................................... 6

*Flynn v. Hubbard*,
   782 F.2d 1084 (5th Cir. 1986)..................................................................................... 6

*Freedom from Religion Foundation, Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011)..................................................................................... 10

*Gonzalez v. Arizona*,
   485 F.3d 1041 (9th Cir. 2007)................................................................................... 12

*League of United Latin American Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997)............................................................................... 4, 12

**Page(s)**

*NLRB v. Arizona,*
   No. CV 11-00913-PHX-FJM, 2011 WL 4852312 (D. Ariz. Oct. 13, 2011) ......................... 14

*O'Connor v. Donaldson,*
   422 U.S. 563 (1975) ...................................................................................................... 4

*Oregon Environmental Council v. Oregon Dep't of Environmental,*
   775 F. Supp. 353 (D. Or. 1991) ................................................................................... 10

*Perry v. Brown,*
   671 F.3d 1052 (9th Cir. 2012) .................................................................................. 7, 8

*Perry v. Proposition 8 Official Proponents,*
   587 F.3d 947 (9th Cir. 2009) ............................................................................. 4, 9, 13

*Pest Comm. v. Miller,*
   648 F. Supp. 2d 1202 (D. Nev. 2009) ................................................... 9, 10, 13, 15

*Prete v. Bradbury,*
   438 F.3d 949 (9th Cir. 2006) ..................................................................... 4, 8, 10, 11

*River Runners for Wilderness v. Alston,*
   No. CV-06-0894 PCT-DGC, 2006 WL 2971495 (D. Ariz. Oct. 17, 2006) ........................ 14

*Sagebrush Rebellion, Inc. v. Watt,*
   713 F.2d 525 (9th Cir. 1983) .................................................................................. 8, 12

*Sierra Club v. Morton,*
   405 U.S. 727 (1972) ...................................................................................................... 7

*Southern Cal. Edison Co. v. Lynch,*
   307 F.3d 794 (9th Cir. 2002) .................................................................................. 5, 7

*State ex rel. Lockyer v. United States,*
   450 F.3d 436 (9th Cir. 2006) ...................................................................................... 9

*U.S. v. Alisal Water Corp.,*
   370 F.3d 915 (9th Cir. 2004) .................................................................................. 4, 5

*United States v. City of Los Angeles,*
   288 F.3d 391 (9th Cir. 2002) ..................................................................................... 10

*Van Hoomison v. Xerox Corp.,*
   497 F.2d 180 (9th Cir. 1974) ..................................................................................... 14

*Yniguez v. State of Arizona,*
   939 F.3d 727 (9th Cir. 1991) ...................................................................................... 4

**Other Authorities**

Nev. Const. art. I, § 21 .......................................................................................................... 5

Page(s)

**Rules**

Fed. Rule Civ. Proc. Rule 24 ................................................................................. passim

1

## I.   INTRODUCTION

2
3        Plaintiffs are productive and loyal residents of the State of Nevada who seek to solemnize
4    their love and devotion toward their life partners by marrying them (or having their out-of-state
5    marriages recognized)—a right the State precludes them and other same-sex couples from
6    exercising.  The Coalition for the Protection of Marriage (the "Coalition") seeks to intervene in
7    the case, asserting that its role as the ballot initiative proponent for Nevada's constitutional
8    marriage ban entitles it to intervene in this case as a matter of right without any further inquiry.
9    Binding law is to the contrary.  The Ninth Circuit has indicated that proponents of a ballot
10   initiative typically have a significant protectable interest in litigation challenging that initiative,
11   but that is only one part of a four-part test to determine whether intervention as of right is
12   permitted.  In a case remarkably similar to this one, the Ninth Circuit held that a ballot initiative
13   sponsor had no right to intervene because the lawsuit was being defended by the government,
14   which adequately represented the sponsor's interests.  That reasoning applies here and compels
15   the denial of the Coalition's motion for intervention as of right.
16
17       Although Plaintiffs oppose the Coalition's motion to intervene as of right, they do not
18   oppose permissive intervention on a limited basis to ensure that the Coalition's participation does
19   not impede the efficiency of the proceedings.  Participation as a permissive intervenor, subject to
20   reasonable limitations, will allow the Coalition to present its views and arguments in support of
21   the marriage ban, but will also protect the rights of Plaintiffs to ensure that the litigation proceeds
22   without undue delay or burdens caused by intervention of this additional defendant and its
23   counsel.  Accordingly, and as explained more fully below, Plaintiffs respectfully request that the
24   Court deny the Coalition's motion to intervene as of right but allow it to participate as a
25   permissive intervenor subject to the following conditions:  (1) the government shall continue to
26   be the lead defendants, and as such shall control the scope of discovery on behalf of the
27
28

government defendants and the Coalition; (2) the Coalition shall not introduce witnesses on topics duplicative of those addressed by witnesses introduced by the government defendants; and (3) the Coalition shall adhere to the Stipulated Discovery Plan and Scheduling Order jointly filed by the parties and shall make its best efforts to comply with future deadlines agreed upon by Plaintiffs and the government defendants.

## II.   STATEMENT OF FACTS

Plaintiffs are eight loving, committed same-sex couples who reside in Nevada.  (Compl. at ¶ 1.)  Like other residents, they "experience the same joys and shoulder the same-challenges of family life as their heterosexual neighbors, co-workers, and other community members who freely may marry."  (Compl. at ¶ 23.)  They are hardworking, contributing citizens who "support their families and nurture their children."  (Compl. at ¶ 23.)  Because of Nevada's marriage ban, plaintiffs are unable to marry in Nevada or have their out-of-state marriages recognized within the State.  Their exclusion from marriage and relegation to a second-class status inflicts serious and irreparable harms upon them.  (Compl. at ¶ 4.)  In this lawsuit, they challenge Nevada's constitutional and statutory marriage ban as violating the Equal Protection Clause of the federal Constitution.  (Compl. at ¶ 88.)  Plaintiffs filed their complaint against Governor Brian Sandoval and three county clerks on April 10, 2012.  On May 17, 2012, Governor Sandoval filed a motion to dismiss the complaint (Dkt. #32), two days after the Coalition filed its motion to intervene (Dkt. #30).

## III.   ARGUMENT

### A.   The Coalition's "Marriage Facts" Are Not Pertinent To This Motion.

Rather than address intervention at the outset, the Coalition offers an "executive summary" of alleged "marriage facts," which the Coalition states that it intends to present to the Court in defense of Nevada's marriage ban, Article 1, § 21 of the Nevada Constitution.  (Brief of

Coalition, pages 7-12.)  The executive summary and supporting Affidavit of Monte Neil Stewart are unrelated to the legal issues raised in the Coalition's motion and should be stricken and disregarded by the Court.[1]  Plaintiffs strongly disagree with the Coalition's view of the institution of marriage and intend to present legal arguments and evidence to the Court on these issues at the appropriate time.  For purposes of this opposition, however, Plaintiffs will focus on the issue before the Court—whether the Coalition has a right to intervene in this lawsuit.  To the extent the Coalition believes its presentation of the information set forth in the executive summary is important to the Court's consideration of Plaintiffs' claims, that does not justify intervention as of right.  The Coalition's participation as a limited permissive intervenor would similarly allow it to present this information to the Court.

> B.   The Coalition Is Not Entitled to Intervene as a Matter of Right.

Absent a federal statute conferring a right to intervene—which the Coalition does not invoke—intervention under Rule 24(a) is only allowed where the applicant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. Rule Civ. Proc. Rule 24(a)(2).  To make this showing, the applicant must prove that: (1) its motion for intervention is timely; (2) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protects its interests; and (4) the existing parties may not adequately represent the applicant's interest.  *Donnelly v. Glickman*, 159 F. 3d 405, 409 (9th Cir. 1998). Failure to meet any one of these requirements is fatal to the Coalition's application.  *Perry v.*

---

[1]Similarly, the Affidavit of William C. Duncan—which purports to describe the litigation strategy used in other cases—is not relevant, lacks foundation, and is not based on personal knowledge.  It should also be stricken and disregarded by the Court.

*Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). As described more fully below, the Coalition has no right to intervene because its interests will be adequately protected by the existing parties.

1.      Intervention Is Not Automatic For Initiative Sponsors.

The Coalition argues that "if the proposed intervenor can establish that it was the proponent of a challenged ballot initiative," a "*per se*" rule applies that compels intervention.[2] That is incorrect. Although the Ninth Circuit has held that the official sponsors of a ballot initiative typically have a significant protectable interest in an action challenging that initiative, it is also clear that the proposed intervenor—ballot sponsor or not—must independently satisfy the other three requirements for intervention. *See, e.g., U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (holding that "[t]he party seeking to intervene bears the burden of showing that all the requirements for intervention have been met"). For example, in *Prete v. Bradbury*, the Ninth Circuit held that sponsors of an Oregon initiative had a protectable interest in a case challenging the initiative, but determined that the sponsors were not entitled to intervene because the government adequately represented their interests. 438 F.3d 949, 955-56, 957-59 (9th Cir. 2006); *see also League of United Latin American Citizens v. Wilson,* 131 F.3d 1297 (9th Cir. 1997) (upholding denial of intervention for group whose members participated in the drafting and sponsoring of ballot initiative because government adequately represented their interests). Under *Prete*, this Court must consider all four intervention factors.

---

[2]Several of the cases cited by the Coalition in support of the purported "per se" rule do not support it. Most notably, the Coalition relies on *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006), but that case does not support a *per se* rule. Quite the opposite, the *Prete* court held that intervention was not appropriate for initiative sponsors. *Prete* is on point and is discussed throughout this opposition. In addition, the Coalition relies on *Yniguez v. State of Arizona*, 939 F.3d 727 (9th Cir. 1991). But that decision was vacated by the United States Supreme Court and lacks precedential authority. *See Arizonans for Official English (AOE) v. Arizona,* 520 U.S. 43, 80 (1997); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 n.5 (9th Cir. 1997) (noting *Yniguez* was vacated by the U.S. Supreme Court and "is thus wholly without precedential authority"); *see generally O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975) (holding that "[o]f necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect").

- 4 -

2.      The Coalition's Only Arguably Protectable Interest In This Litigation
        Arises From Its Role As The Proponent Of The Constitutional Marriage
        Ban.

Plaintiffs' lawsuit challenges on equal protection grounds the constitutionality of

Nevada's marriage ban, including the constitutional amendment enacted in 2002 providing that

"[o]nly a marriage between a male and female person shall be recognized and given effect in this

state."  Nev. Const. art. I, § 21.  The Coalition advances four possible significant protectable

interests relating to this lawsuit: (1) an interest as a proponent of the marriage ban; (2) a

reputational interest; (3) an "interest in its associational capacity in protecting its married and

engaged members' liberty interest in the perpetuation of the vital social institution of man-woman

marriage"; and (4) an interest in protecting "the religious liberty of its members . . . whose

religious foundations support man-woman marriage."  (Brief of Coalition, pages 16-17.)  Of these

interests, only the first—its interest as proponent of the marriage ban—is significant and

protectable under established case law, as discussed below.  Accordingly, the Court's evaluation

of the Coalition's motion to intervene should focus solely on its interest as a ballot proponent.

To establish a significant protectable interest, an applicant must demonstrate: (1) an

interest protectable under some law; and (2) a relationship between the legally protected interest

and the claims at issue.  *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003).  An

"undifferentiated, generalized interest in the outcome of an ongoing action is too porous a

foundation on which to premise intervention as of right."  *Southern Cal. Edison Co. v. Lynch*, 307

F.3d 794, 803 (9th Cir. 2002).  The interest must be "direct, noncontingent, substantial and legally

protectable."  *Id.* (internal quotation marks omitted).  For instance, pure economic expectancy is

not a legally protectable interest for purposes of intervention.  *See, e.g.*, *U.S. v. Alisal Water*

*Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (holding that prospective collectability of debt does not

trigger a right of intervention).  Even where a protectable interest exists, an applicant must satisfy

- 5 -

the relationship requirement by showing that "the resolution of the plaintiff's claims actually will affect the applicant." *Arakaki*, 324 F.3d at 1084.

First, the Coalition claims its members' "reputational" interest in not being the targets of supposed bigotry arguments satisfies Rule 24. (Brief of Coalition, page 17.) Not so. An applicant's "reputation" is not a significant protected interest warranting intervention. *See Flynn v. Hubbard*, 782 F.2d 1084, 1093 (5th Cir. 1986) (holding that "a party's reputation interest has not been found sufficient to require intervention as of right"); *see also Edmondson v. Nebraska*, 383 F.2d 123, 127 (8th Cir. 1986) (holding that "the mere fact that [an applicant's] reputation is thereby injured is not enough" to warrant intervention).

Moreover, any "reputational" interest bears no relationship to the claims at issue. The Coalition alleges that "Plaintiffs' camp will make animus/bigotry arguments," but cannot identify any specific charge of animus or bigotry in the complaint or any substantive pleading directed *specifically* against the Coalition. (Brief of Coalition, page 13.) Furthermore, Plaintiffs need not prove animus to prevail on their equal protection claim, and, in any event, animus is not the same thing as bigotry. As Justice Kennedy eloquently stated, "[p]rejudice, we are beginning to understand, rises not from malice or hostile animus alone." *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 374 (2001) (Kennedy, J., concurring); *see also City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 448-50 (1985) (striking down use permit ordinance because law rested on "a view that those in the burdened class are not as worthy or deserving as others").

Second, the Coalition's supposed interests in protecting "its members' liberty interest in the perpetuation of the vital social institution of man-woman marriage" and "the religious liberty of its members who are people of faith and whose religious foundations support man-woman marriage" are similarly not significant or protected for purposes of intervention. (Brief of

Coalition, page 17.)  The Coalition seeks to establish and maintain an ideological uniformity

between the law and its members' views.  But organizations are not entitled to "vindicate their

own value preferences through the judicial process."  *Sierra Club v. Morton*, 405 U.S. 727, 740

(1972).[3]  And the suggestion that the "marriage institution" will be harmed or cease to exist if

Plaintiffs prevail does not create a protectable interest either.  As noted above, an

"undifferentiated, generalized interest in the outcome of an ongoing action is too porous a

foundation on which to premise intervention as of right."  *Southern Cal. Edison*, 307 F.3d at 803.

Furthermore, as the Ninth Circuit recently held, "[i]t is implausible to think that denying two men

or two women the right to call themselves married could somehow bolster the stability of families

headed by one man and one woman."  *Perry v. Brown*, 671 F.3d 1052, 1089 (9th Cir. 2012).

Furthermore, the Coalition's liberty and religious interests have no relationship to the

lawsuit.  Plaintiffs wish to enter into civil marriage or have their out-of-state marriages

recognized by the State of Nevada.  They do not seek to compel the Coalition's members to

change their religious or philosophical conception of marriage.  This case does not adversely

affect anyone else's ability to marry.  The Coalition's contention that the "marriage institution" to

which its members belong "will simply no longer be available to them or to their children" in

violation of their liberty and religious interests is foreclosed by the Ninth Circuit's recent decision

in *Perry v. Brown*.  In that case, the Ninth Circuit unequivocally held that permitting same-sex

couples to marry does not require any religious group to "change its religious policies or practices

with regard to same-sex couples" and that California's marriage ban did nothing to promote "the

religious liberty interest" of religious organizations by, for example, permitting them to refuse

public accommodation based on sexual orientation in violation of anti-discrimination statutes.

---

[3]The Coalition ironically argues that Plaintiffs are impermissibly "imposing on government a duty to construct and maintain . . . the radically different genderless marriage institution" (Brief of Coalition, page 10), but simultaneously believes the Court has a duty to protect its members' "religious liberty interests" by ensuring "the perpetuation of the vital social institution of man-woman marriage."  (*Id*.)

1   *Perry v. Brown*, 671 F.3d at 1091.  Because Nevada's marriage ban does nothing to promote

2   religious liberty, its invalidation will do nothing to undermine that interest.

3          3.      Plaintiffs' Lawsuit May Impair Only The Coalition's Interest As Proponent
4                  Of The Constitutional Marriage Ban.

5          Intervention is only proper if the Plaintiffs' lawsuit may as a practical matter impair or

6   impede "the ability of the [intervening] organization to protect its interests."  *Sagebrush*

7   *Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).  Because the Coalition has only one

8   significant protectable interest—as proponent of the Constitutional marriage ban—that is the only

9   interest that may be impaired by disposition of this lawsuit.
10

11         4.      The Coalition's Interests Are Adequately Represented by the State of
                   Nevada.
12
           Even if its interests are significant and may be impaired, an applicant has no right to
13
    intervene if its interests are adequately represented by the existing parties.  *Arakaki v. Cayetano*,
14
    324 F.3d 1078, 1086 (9th Cir. 2003).  In *Prete v. Bradbury*, the Ninth Circuit held that an
15
    initiative sponsor was not permitted to intervene because it "failed to present evidence sufficient
16
    to support a finding that their interests are not adequately represented . . . ."  438 F.3d 949, 959
17
    (9th Cir. 2006).  That case controls here and compels the denial of the Coalition's motion.
18

19         In evaluating whether a potential intervenor's interests are adequately represented, the

20  Court looks at whether the parties "share the same ultimate objective."  *Arakaki*, 324 F.3d at

21  1086.  If so, a presumption of adequacy arises and "differences in litigation strategy [will] not

22  normally justify intervention."  *Id*.  There is an additional "assumption of adequacy when the

23  government is acting on behalf of a constituency that it represents."  *Id*.  In the absence of "a *very*

24  compelling showing to the contrary, it will be presumed that a State adequately represents its

25

26

27

28

citizens when the applicant shares the same interest."[4] *Id.* (emphasis added; internal quotations omitted).

While the Coalition argues that ballot sponsors can satisfy Rule 24 more easily than other applicants, the *Arakaki* presumptions mean that they actually bear a *greater* burden: they must "make a 'very compelling showing' of the government's inadequacy by demonstrating a likelihood that the government will abandon or concede a potentially meritorious reading of the statute." *State ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006).  The presumption is difficult to overcome because the government represents all citizens, including proponents of the measure, and is "sufficiently familiar with legal challenges to initiative petitions so as to adequately represent the Proposed Intervenors' interest."  *See e.g., Pest Comm. v. Miller*, 648 F. Supp. 2d 1202, 1212-14 (D. Nev. 2009) (finding that Nevada's Secretary of State and referendum sponsors "shared the same ultimate objective: to uphold [Nevada's statutory requirements for referendum petitions] against constitutional attack," and that the sponsors therefore "failed to demonstrate that their interests [were] inadequately represented by the present parties").  So long as the central objective of the sponsor and the State is the same, the representation will be deemed adequate unless the would-be intervenor provides compelling evidence to the contrary.[5]  This rule applies even where the government "welcomes the aid of intervenors on [its] behalf."  *See Doe v. Schwarzenegger*, No. CIV. S-06-2521 LKK/GGH, 2007 U.S. Dist. LEXIS 850, at *9 (E.D. Cal. Jan. 18, 2007) (holding that the government's statement of

---

[4] The Coalition selectively cites to *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F. 3d 893 (9th Cir. 2011), and quotes a 3-factor test used to determine adequacy of representation.  (Brief of Coalition, page 19.)  The *Citizens* court went on to explain the *Arakaki* presumptions and stated expressly that an applicant for intervention must make a "compelling showing" of inadequacy of representation where the presumptions apply.  *Id.* at 898.  The Coalition conveniently ignores that portion of the legal standard.

[5] *See also Perry*, 587 F. 3d at 953 (denying the California Family Alliance's motion to intervene because its "interest in defending the opposite-sex definition of marriage under California law was not 'meaningfully distinct' from the Proponents' interest in defending the constitutionality of [California's marriage ban]").

non-opposition to a motion to intervene did not "constitute[] a concession" that it could not

adequately represent an applicant's interests in defending Proposition 83).

In this case, the Coalition fails to overcome the presumption of adequate representation,

and the Ninth Circuit's decision in *Prete v. Bradbury* controls.  In *Prete*, the sponsor of an

Oregon ballot measure sought to intervene in a lawsuit challenging the ballot measure.  The Ninth

Circuit agreed that the first three prongs of the intervention test had been met, but held that the

intervenor failed to present "that compelling showing of inadequate representation."  438 F. 3d at

957.  As in *Prete* and *Pest Comm.*, the Coalition and the Governor share the same ultimate

objective in this case: to uphold the marriage ban against constitutional attack.  In filing a motion

to dismiss, the Governor has expressed his intent to defend the ban and in effect further the

Coalition's interests.  *See, e.g., Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d

836, 842 (9th Cir. 2011) (finding that representation was adequate because the government's

motion to dismiss reflected its desire to defend the law).  While the Coalition purports to have a

different or unique motive in defending the marriage ban (to "protect the particular and personal

liberty interests of people like the Coalition's married and engaged members . . . " (Brief of

Coalition, page 20)), differences in litigation strategy or motives do not render the government's

representation inadequate.  *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir.

2002) (concluding that "[A]ny differences they [the proposed intervenors] ha[d] were merely

differences in strategy, which [we]re not enough to justify intervention as a matter of right"); *see*

*Oregon Environmental Council v. Oregon Dep't of Environmental*, 775 F. Supp. 353, 359 (D. Or.

1991) (holding that "[t]he interest of a putative intervenor is not inadequately represented by a

party to a lawsuit simply because the party to the lawsuit has a motive to litigation that is different

from the motive to litigate of the intervenor").

The Coalition's arguments for why the government's defense is inadequate have already been rejected by the Ninth Circuit in *Prete*, and so should they be rejected here.[6]  The Coalition says that it would bring a specific type of "fact-based" expertise concerning the "social institutional argument for man-woman marriage."  (Brief of Coalition, page 21.)  It also argues that the "short-budgeted office" of the Attorney General lacks the "requisite depth of knowledge regarding th[is] defense."  (*Id.*)  The ballot sponsor in *Prete* similarly argued that the defendant was not able to "provide a complete defense of [the initiative] due to 'budgetary constraints.'" 438 F.3d at 957.  The Ninth Circuit observed that "[v]irtually all governments face budget constraints," and that "if such a basis were sufficient to establish inadequate representation, it would eliminate the presumption of adequate representation when the government and the intervenor-applicant share the same interest."  *Id.*  The Ninth Circuit also dismissed the sponsor's claim that the Secretary of State lacked "specialized knowledge into the signature gathering process" and would not be able to "fully develop the record and respond to plaintiff's factual allegations."  *Id.* at 958.  The court presumed that the Secretary either had this knowledge or could acquire it through the use of experts or discovery (including consultation with the ballot sponsor).  *Id.*  As in *Prete*, the Coalition has not presented any *evidence* to demonstrate that Governor Sandoval's defense will be inadequate, and so the presumption of adequate representation has not been rebutted.

Cases where a government's defense of a law was found to be inadequate are materially different.  For example, in *Citizens for Balanced Use v. Montana Wilderness Ass'n*, the only case that the Coalition cites in its discussion of inadequate representation, the plaintiffs challenged an interim order restricting snowmobile use in a national forest and various conversation groups

---

[6]Other than its misleading and incomplete citation to *Citizens for Balanced Use* for the general test to determine inadequacy of representation, the Coalition does not cite a single case in its discussion of why the Governor's defense will not adequately represent the Coalition's interests.  (Brief of Coalition, pages 19-21.)  This lack of legal support is telling.

moved to intervene in support of the order.  647 F.3d 893, 896 (9th Cir. 2011).  The conservation groups demonstrated that the Forest Service's defense would not adequately protect their interests because they did not share the same ultimate objectives.  Specifically, the Forest Service implemented the interim order under compulsion of a prior district court decision, and it was challenging that decision on appeal.  *Id.* at 899.  Unlike the Forest Service, the conservation groups were actually opposed to use of snowmobiles.

Similarly, in *Sagebrush Rebellion v. Watt*, the plaintiff challenged the former Interior Secretary's actions in creating a conservation area in Idaho.  713 F.2d 525 (9th Cir. 1983).  The case was being defended by the new Secretary of the Interior, but he was previously head of the legal organization representing the plaintiff in the lawsuit.  *Id*. at 528.  Under those circumstances, the Court found that the government's defense did not adequately represent the interests of conservation groups which sought to intervene in the lawsuit.  *Id*.  As the Ninth Circuit subsequently held, "*Sagebrush Rebellion* turns on the lack of any real adversarial relationship between the plaintiffs and the defendants.  That is not the situation here.  Nothing in the record before us suggests that defendants are unwilling or unable to defend Proposition 200."  *Gonzalez v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007) (upholding denial of intervention for citizen group "that put forth significant effort to ensure the passage of Proposition 200"); *see also Wilson*, 131 F.3d at 1301 (finding that public interest group that drafted and sponsored Proposition 187 did not make compelling showing because it had the same objective as the Governor: to defend the proposition).  The same is true here.

The Coalition's arguments that the State is not "protecting the personal religious liberties of specific religious entities" also fails.  First, as described above, the Coalition's reputational, liberty, and religious interests are not "significant protectable" interests for purposes of this motion to intervene.  The focus in this intervention analysis, therefore, is on the Coalition's

interest as proponent of the marriage ban, and Governor Sandoval adequately represents those

interests as the governor of the state whose citizens approved of the ban.  In any event, to the

extent that the Coalition believes the religious liberty of its members depends on prohibiting

same-sex couples from marrying, the State *is* protecting that interest by opposing Plaintiffs'

challenge.  The government can competently protect the most personal of interests.  *See Dep't of*

*Fair Empl. & Hous. v. Lucent Techs, Inc.*, 642 F.3d 728, 740-41 (9th Cir. 2011) (denying a

terminated employee's motion to intervene in a wrongful termination suit initiated by the

Department of Fair Employment and Housing because the Department adequately represented the

employee's interests and sought the same remedies he did, namely reinstatement).  As in *Perry*,

the Coalition's interest is not "meaningfully distinct" from the State's interest: to defend the

constitutionality of the marriage ban.  *Perry*, 587 F.3d at 951.

The Coalition has failed to overcome the presumption that the Governor adequately

represents its interests.  Its motion to intervene as a matter of right should be denied.

C.    <u>Subject To Certain Limitations, Plaintiffs Do Not Oppose The Coalition's Motion To The Extent It Seeks Permissive Intervention.</u>

Under Rule 24(b)(1)(B), a court may allow intervention if the applicant meets three

threshold requirements: (1) it shares a common question of law or fact with the main action; (2)

its motion is timely; and (3) the court has an independent basis for jurisdiction over the

applicant's claims."  *Perry*, 587 F.3d at 955.  Even if the applicant satisfies these requirements,

the court can still deny intervention.  *Id.*  In exercising its discretion, a court should consider

"whether intervention will unduly delay or prejudice the original parties, whether the applicant's

interests are adequately represented by the existing parties, and whether judicial economy favors

intervention."  *Pest Comm.*, 648 F. Supp. at 1214.

While the requirements of permissive intervention differ from those of intervention as a

matter of right, the Coalition's motion does not meaningfully address permissive intervention.

Nonetheless, Plaintiffs do not oppose the Coalition's motion to the extent it seeks permissive intervention so long as certain conditions are imposed to ensure that the Coalition's participation does not "unduly delay or prejudice the original parties." *Id.*[7]

When "granting an application for permissive intervention, a federal district court is able to impose almost any condition." *See Lucent*, 642 F.3d at 741-42 (quoting *Beauregard, Inc. v. Sword Servs., LLC*, 107 F. 3d 351, 352-53 (5th Cir. 1997)); *see also Van Hoomison v. Xerox Corp.*, 497 F.2d 180, 181-82 (9th Cir. 1974) (noting that "[t]he district court's discretion . . . under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues"). For example, courts have required permissive intervenors to file only non-duplicative discovery requests, *NLRB v. Arizona*, No. CV 11-00913-PHX-FJM, 2011 WL 4852312, at *9 (D. Ariz. Oct. 13, 2011); to jointly file briefs with the existing parties on the same side, *Center for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 4542947, at *4 (N.D. Cal. Oct. 2, 2008); and to comply with an existing litigation schedule, *River Runners for Wilderness v. Alston*, No. CV-06-0894 PCT-DGC, 2006 WL 2971495, at *1 (D. Ariz. Oct. 17, 2006).

Specifically, Plaintiffs request that the Coalition's participation as a permissive intervenor be conditioned in three ways, in order to minimize undue delay and burden while allowing the Coalition's participation in the case:

1. the government defendants shall continue to be the lead defendants, and as such shall control the scope of discovery on behalf of the government defendants and the Coalition (for example, although the Coalition may participate and pose questions at depositions noticed by the government defendants, only the government defendants may notice any depositions);

2. the Coalition shall not introduce witnesses on topics duplicative of those addressed by witnesses introduced by the government defendants; and

---

[7]In non-opposing the Coalition's request for permissive intervention, Plaintiffs do not concede that the Coalition has standing to pursue this case in this Court or on appeal. Nor do Plaintiffs waive the right to object to witnesses or evidence presented by the Coalition.

3. the Coalition shall adhere to the Stipulated Discovery Plan and Scheduling Order jointly filed by the parties on June 1, 2012 (Dkt. #39), and shall make its best efforts to comply with future dates and deadlines agreed upon by Plaintiffs and the government defendants.

Although the Coalition's interests do not justify intervention as of right, its interests can be fully protected by its participation as a limited permissive intervenor.  Participation subject to the two conditions described above will allow the Coalition to attend depositions, to file its own briefs, to present its arguments and evidence in defense of the marriage ban, and to fully explain its position on the institution of marriage, the issue on which the Coalition claims particular expertise.  Limited permissive intervention also protects the rights of the Plaintiffs and will ensure that their case is heard in a timely and expeditious manner without undue delay, burden, or prejudice.  *See Pest Comm.*, 648 F. Supp. at 1214.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the Coalition's motion to intervene as of right.  Plaintiffs do not oppose the motion for permissive intervention subject to the following conditions:  (1) the government shall continue to be the lead defendants, and as such shall control the scope of discovery on behalf of the government defendants and the Coalition; (2) the Coalition shall not introduce witnesses on topics duplicative of those addressed by witnesses introduced by the government defendants; and (3) the Coalition shall adhere to the Stipulated Discovery Plan and Scheduling Order jointly filed by the parties and shall make its best efforts to comply with future deadlines agreed upon by Plaintiffs and the government defendants.

//

//

//

//

- 15 -

1  Dated:  June 1, 2012

2

3  Respectfully submitted,

4  O'MELVENY & MYERS LLP

5  By: /s/ Dawn Sestito
   CARLA CHRISTOFFERSON (*pro hac vice*)
6  DAWN SESTITO (*pro hac vice*)
   MELANIE CRISTOL (*pro hac vice*)
7  RAHI AZIZI (*pro hac vice*)
8  400 South Hope Street
   Los Angeles, California  90071
9
   JON W. DAVIDSON (*pro hac vice*)
10 TARA L. BORELLI (*pro hac vice*)
   PETER C. RENN (*pro hac vice*)
11 SHELBI DAY (*pro hac vice*)
12 LAMBDA LEGAL DEFENSE AND
   EDUCATION FUND, INC.
13 3325 Wilshire Boulevard, Suite 1300
   Los Angeles, California  90010
14
   KELLY H. DOVE (Nevada Bar No. 10569)
15 MAREK P. BUTE (Nevada Bar No. 09989)
16 SNELL & WILMER LLP
   3883 Howard Hughes Parkway, Suite 1100
17 Las Vegas, Nevada  89169

18 *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that I will electronically file the foregoing with the Clerk of the Court for the United States District Court, District of Nevada by using the CM/ECF system on June 1, 2012.  All participants in the case are registered CM/ECF users, and will be served by the CM/ECF system.

By:  /s/ Melanie Cristol
Melanie Cristol
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA  90071

- 17 -