JON W. DAVIDSON (*pro hac vice*)
TARA L. BORELLI (*pro hac vice*)
PETER C. RENN (*pro hac vice*)
SHELBI DAY (*pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
3325 Wilshire Boulevard, Suite 1300
Los Angeles, California  90010
Email:  jdavidson@lambdalegal.org
          tborelli@lambdalegal.org
          prenn@lambdalegal.org
          sday@lambdalegal.org
Tel: 213.382.7600 | Fax:  213.351.6050

CARLA CHRISTOFFERSON (*pro hac vice*)
DAWN SESTITO (*pro hac vice*)
MELANIE CRISTOL (*pro hac vice*)
RAHI AZIZI (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071
Email:  cchristofferson@omm.com
          dsestito@omm.com
          mcristol@omm.com
          razizi@omm.com
Tel: 213.430.6000 | Fax: 213.430.6407

KELLY H. DOVE (Nevada Bar No. 10569)
MAREK P. BUTE (Nevada Bar No. 09989)
SNELL & WILMER LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
Email:  kdove@swlaw.com
          mbute@swlaw.com
Tel: 702.784.5200 | Fax:  702.784.5252

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BEVERLY SEVCIK and MARY BARANOVICH; ANTIOCO CARRILLO and THEODORE SMALL; KAREN GOODY and KAREN VIBE; FLETCHER WHITWELL and GREG FLAMER; MIKYLA MILLER and KATRINA MILLER; ADELE TERRANOVA and TARA NEWBERRY; CAREN | No. 2:12-CV-00578-RCJ-PAL<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

CAFFERATA-JENKINS and FARRELL
CAFFERATA-JENKINS; and MEGAN
LANZ and SARA GEIGER,

               Plaintiffs,

    v.

BRIAN SANDOVAL, in his official capacity
as Governor of the State of Nevada; DIANA
ALBA, in her official capacity as Clerk for
Clark County; AMY HARVEY, in her
official capacity as Clerk for Washoe
County; and ALAN GLOVER, in his official
capacity as Clerk-Recorder for Carson City,

               Defendants

## INTRODUCTION

Plaintiffs are eight loving same-sex couples who have committed their lives to each other. (Compl. at ¶¶ 50-73.)  All of them support and care for each other through life's joys and challenges and many are nurturing and rearing children together.  Plaintiffs bring this suit because each wishes to marry his or her cherished life partner or to have his or her valid marriage from another jurisdiction recognized as a marriage in Nevada.  (Compl. at ¶¶ 24, 29-32.)  Plaintiffs Beverly Sevcik and Mary Baranovich, for example, are both in their seventies and yet they remain unable to celebrate a single wedding anniversary, despite over four decades of love and commitment.

Civil marriage plays a singular role in society as the universally recognized and celebrated hallmark of a couple's commitment to build family life together.  Though Plaintiffs have formed enduring family bonds equally worthy of the respect afforded to different-sex couples through marriage, the state has foreclosed from them from the honored designation of marriage and relegated them instead to the inferior and novel status of registered domestic partnership.  Even while consigning same-sex couples to a second-class status, however, the State has acknowledged that no governmental interest exists in treating same-sex couples differently with respect to the rights and responsibilities of spouses, given that it affords "the same" rights and responsibilities to

1    registered domestic partners.  Nev. Rev. Stat. § 122A.200.

2            Ruling in a similar context—and relying significantly on California's provision of the

3    same rights and responsibilities to registered same-sex domestic partners while excluding them

4    from marriage—the Ninth Circuit recently overturned California's state constitutional amendment

5    (commonly referred to as Proposition 8) prohibiting marriage for same-sex couples.  *Perry v.*

6    *Brown*, 671 F.3d 1052 (9th Cir. 2012).  Just as in *Perry*, Nevada's exclusion of same-sex couples

7    from marriage "serves no purpose, and has no effect, other than to lessen the status and human

8    dignity of gays and lesbians in [Nevada], and to officially reclassify their relationships and

9    families as inferior to those" of different-sex couples.  *Id.* at 1063.

10                           **SUMMARY OF ARGUMENT**

11           Plaintiffs allege that Defendants discriminate on the basis of sexual orientation and sex in

12   violation of federal guarantees of equal protection by denying same-sex couples the right to marry

13   and relegating them instead to the inferior and novel status of registered domestic partnership,

14   enacted in Nevada in 2009.  Defendants Brian Sandoval and Alan Glover (collectively,

15   "Defendants") move to dismiss for lack of subject matter jurisdiction, relying entirely on *Baker v.*

16   *Nelson*, 409 U.S. 810 (1972) (mem.), a nearly 40-year-old summary dismissal of claims by a

17   same-sex couple seeking to marry in early 1970s Minnesota.[1]  In short, Defendants contend that

18   Plaintiffs are not even entitled to judicial review—in this or in any other court—of the federal

19   constitutional questions they have presented because those questions have, supposedly, already

20   been answered.

21           Defendants neglect to acknowledge the limited reach of a summary dismissal—which

22   binds lower courts only on the precise questions presented in the statement of jurisdiction—and

23   the fact that this case presents entirely different questions from those considered in *Baker*.  While

_____

24           [1]     *Baker* arose from a suit filed in Minnesota state court by a same-sex couple
25   seeking the freedom to marry under the federal constitution.  191 N.W.2d 185, 186 (Minn. 1971).
     After the Minnesota Supreme Court rejected their claims, the couple appealed to the U.S.
26   Supreme Court pursuant to former 28 U.S.C. § 1257(2).  Until 1988, this statute afforded the
     Supreme Court mandatory appellate jurisdiction for review of state supreme court decisions
27   adjudicating the constitutionality of a state law; the statute was subsequently replaced with review
     by writ of certiorari.  The Supreme Court summarily dismissed the Minnesota couple's appeal,
28   which was based solely on a claim of sex discrimination, "for want of substantial federal
     question."  409 U.S. at 810.

1   the couple in *Baker* sought to marry in a state that afforded no relationship recognition to same-

2   sex couples, the Ninth Circuit recognized in *Perry* that a very distinct question is raised where a

3   state has disclaimed all conceivable rationales for treating same-sex couples differently by

4   providing them the same rights and responsibilities as spouses through a legal status like

5   Nevada's registered domestic partnership.  671 F.3d at 1086 (holding that purported child-related

6   governmental rationales are not served by state constitutional amendment excluding same-sex

7   couples from marriage because state law already affords such couples "identical rights with

8   regard to forming families and raising children").  *Baker* thus has no application here.  Moreover,

9   *Baker* did not even address a claim for violation of equal protection on the basis of sexual

10   orientation, a central contention in the complaint in this case.  (Compl. at ¶¶ 86-103.)  Finally,

11   even assuming *arguendo* that *Baker* presented the same precise challenges asserted in this case,

12   which it did not, subsequent doctrinal developments have extinguished any precedential force

13   *Baker* may once have had.  The complaint clearly presents a substantial federal question which

14   should be resolved on the merits.

**ARGUMENT**

15

16       Defendants cannot overcome the high hurdle necessary to warrant dismissal of Plaintiffs'

17   federal equal protection claim for lack of a substantial federal question.  Dismissal on this basis is

18   reserved to claims "so attenuated and unsubstantial as to be absolutely devoid of merit, wholly

19   insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion."

20   *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (internal quotations and citations omitted).  A

21   claim is deemed "insubstantial" based on prior Supreme Court precedent only if "its unsoundness

22   so clearly results from the previous decisions of this court as to foreclose the subject and leave no

23   room for the inference that the question sought to be raised can be the subject of controversy."

24   *Id.* at 538 (internal quotations and citations omitted).  *Baker*'s 40-year-old summary dismissal did

25   not address specific claims in this case and has, in any event, been overtaken by dramatic

26   advances in constitutional doctrine; it therefore cannot foreclose the substantial claims at issue

27   here or their resolution by this Court.[2]

28

---

[2]     Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter
jurisdiction, in contrast to dismissal pursuant Rule 12(b)(6) for failure to state a claim, precludes a

1    I.    ***BAKER V. NELSON* DID NOT EXAMINE THE QUESTIONS POSED HERE, AND
2          ANY LIMITED PRECEDENTIAL VALUE IT STILL MAY HAVE DOES NOT
          APPLY.**

3          A.    **Summary Dismissals Reach No Further Than The Specific Issues In The
                 Statement Of Jurisdiction Reviewed By The Supreme Court.**
4

5          Defendants fail to acknowledge the narrow precedential value of summary dismissals

6    under the Supreme Court's previously mandatory appellate jurisdiction.  As a limited vehicle for

7    resolving a case, a summary dismissal binds lower courts only on the precise issues presented in

8    the statement of jurisdiction and in no way validates the *reasoning* of the underlying decision.

9    *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam).  A summary dismissal for want of a

10   substantial federal question issued without an opinion, such as in *Baker*, thus "is an affirmance of

11   the judgment only," and "the rationale of the affirmance may not be gleaned solely from the

12   opinion below."  *Id.* (holding that the lower court erred in assuming that a summary dismissal

13   "adopted the reasoning as well as the judgment" of an underlying opinion).  *See also Fusari v.

14   Steinberg*, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring) ("When we summarily affirm,

15   without opinion … we affirm the judgment but not necessarily the reasoning by which it was

16   reached."); *Washington v. Confederated Bands & Tribes*, 439 U.S. 463, 478 n.20 (1979) (noting

17   that a summary dismissal "does not, as we have continued to stress … necessarily reflect our

18   agreement with the opinion of the court whose judgment is appealed").  In fact, "upon fuller

19   consideration of an issue under plenary review, the Court has not hesitated to discard a rule which

20   a line of summary affirmances may appear to have established."  *See Fusari*, 419 U.S. at 392

21   (Burger, C.J., concurring) (collecting authorities).

22         Emphasizing the limited nature of this rule, *Mandel* clarified that a summary dismissal

23   "should not be understood as breaking new ground," but instead as a decision specific "to the

24   particular facts involved."  *Id.* at 176.  A summary dismissal accordingly does not "have the same

25   ────────────────────────────────────────────────
     decision on the merits.  *See Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1343 (9th Cir.
26   1981) (holding that an important difference between dismissal for lack of jurisdiction versus
     failure to state a claim is that the former forecloses a judgment on the merits); *see also Cook v.*
27   *Peter Kiewit Sons Co.*, 775 F.2d 1030, 1035 (9th Cir. 1985) (holding that District Court judge's
     "dismissal for lack of subject matter jurisdiction" was "not a judgment on the merits, and he
28   retained no power to make judgments relating to the merits of the case").

1   precedential value … as does an opinion of this Court after briefing and oral argument on the

2   merits." *Washington*, 439 U.S. at 478 n.20, *citing Edelman v. Jordan*, 415 U.S. 651, 671 (1974)

3   (summary affirmances "are not of the same precedential value as would be an opinion of this

4   Court treating the question on the merits"), *overruled on other grounds by Will v. Mich. Dep't of*

5   *State Police*, 491 U.S. 58 (1989).  *See also Richardson v. Ramirez*, 418 U.S. 24, 83 n.27 (1974)

6   ("summary affirmances are obviously not of the same precedential value as would be an opinion

7   of this Court treating the question on the merits").

8        For these reasons, a summary dismissal for want of a substantial federal question binds

9   lower courts based only on "the *specific* challenges presented in the statement of jurisdiction,"

10  and extends only to "prevent lower courts from coming to opposite conclusions on the *precise*

11  issues presented and *necessarily decided* by those actions."  *Mandel*, 432 U.S. at 176 (emphasis

12  added).  The facts of *Mandel* are instructive on this point.  *Mandel* involved a challenge to a

13  Maryland election law requiring the early submission of voter signatures by independent political

14  candidates to qualify for the ballot.  *Id.* at 174.  A lower court found the Maryland law

15  unconstitutional, believing itself to be bound by the Supreme Court's summary affirmance in

16  *Tucker v. Salera*, 424 U.S. 959 (1976), *aff'g* 399 F. Supp. 1258 (E.D. Pa. 1975).  *Mandel*, 432

17  U.S. at 175.  The underlying case affirmed in *Tucker* had considered a similar Pennsylvania law

18  requiring early submission of signatures—but coupled with a 21-day limitation on the ability to

19  gather such signatures.  Emphasizing the limited application of the Court's summary decisions,

20  *Mandel* found this mere factual difference between the two laws—where one imposed a 21-day

21  limit for gathering signatures and one did not—sufficient to distinguish *Tucker* and render it non-

22  binding on the questions in *Mandel*.  *Id.* at 176.

23       This was so even though the underlying opinion in *Tucker* had not relied on the 21-day

24  limitation to reach its decision, and found the law unconstitutional solely by virtue of its

25  requirement for early submission of signatures.  *Id.* at 175 (stating that a summary affirmance

26  does not adopt the reasoning of the underlying opinion).  Just as the summary affirmance in

27  *Tucker* did not bind the subsequent court in *Mandel*, the summary affirmance in *Baker* has no

28  application here.  As described further below, the question in this case could not even have

1    "lurk[ed] in the record" in *Baker*, and lower courts can read no more into a summary dismissal

2    "than was essential to sustain th[e] judgment."  *Perry*, 671 F.3d at 1082 n.14 (internal quotation

3    marks omitted).  *Perry* confirms that a context-specific equal protection question, such as the one

4    *Perry* considered in California, is "a wholly different question" than was presented in *Baker*.  *Id*.

5    As explained below, this case too presents a question narrowly defined by Nevada's particular

6    legal landscape.  *Baker* could not even have envisioned this question, given its summary

7    dismissal 37 years before Nevada enacted the domestic partnership law central to this equal

8    protection challenge.[3]

9           **B.      This Case Raises Questions That *Baker* Could Not Have Conceived, And**

10                 **Certainly Did Not Decide.**

11          *Baker* was decided on the basis of a dramatically different legal landscape, and as the

12   Ninth Circuit explained in *Perry*, this context is indispensable for defining the issue before the

13   Court.  671 F.3d at 1063-64.

14          When *Baker* was decided, neither Minnesota nor any other state in the nation provided

15   any formal statewide relationship recognition to same-sex couples.

16          Today, Nevada affords same-sex registered domestic partners virtually every state law

17   right and responsibility provided to spouses—just like California's domestic partnership law that

18   shaped the Ninth Circuit's review in *Perry*.  Nev. Rev. Stat. § 122A.200, et seq.  The Ninth

19   Circuit—deciding only the specific question before it—adapted its ruling to the context of

20   Proposition 8 in California as well as the particular equal protection problem created when a state

21   eliminates same-sex couples' access to the honored designation of "marriage," "while leaving in

22   place all of its incidents" for those who register as domestic partners.  *Perry*, 671 F.3d at 1063.

23   The question decided by *Perry* therefore did not overlap with the question decided in *Baker*.

24          The issues before this Court are similarly shaped by the specific context of Nevada's

25   domestic partnership law, which, as a matter of state policy, disavows any governmental interest

26   in treating same-sex couples differently with respect to the rights and responsibilities of spouses.

27   _____

[3]       While Plaintiffs do not suggest that any other state's exclusion of same-sex couples from
28   marriage would survive constitutional review, this case calls into question only Nevada's
     distinctive laws regarding same-sex relationships.

1    Plaintiffs accordingly raise only a narrow, tailored question:  whether a law violates equal

2    protection where it works "a singular and limited change" to a state constitution by removing

3    from same-sex couples only "the right to have their committed relationships recognized … with

4    the designation of 'marriage,'" even while the state affords them "rights and responsibilities that

5    are identical to those of married spouses and form an integral part of the marriage relationship."

6    *Perry*, 671 F.3d 1076.  *Baker* could not even have imagined, let alone decided, this question.

7         Moreover, Nevada's context affects not only the narrow parameters of Plaintiffs' claims,

8    but also the Court's analysis of any purported governmental interests.  Based on the unique legal

9    landscapes in California and Nevada, *Perry* forecloses certain governmental rationales here that

10   were accepted by the Minnesota Supreme Court in *Baker*.  For example, where a state's

11   restriction on marriage for same-sex couples has "no effect on the rights of same-sex couples to

12   raise children or on the procreative practices of other couples," *Perry* establishes as a matter of

13   law that the restriction cannot be supported by governmental "interests in childrearing or

14   responsible procreation."  671 F.3d at 1063.  Nevada's constitutional amendment similarly has no

15   effect on the state's policy decision to afford same-sex registered domestic partners the same

16   rights and obligations with respect to their children.  *See* Nev. Rev. Stat. § 122A.200(d).

17        *Baker*, in stark contrast, was decided at a time when Minnesota afforded no recognition to

18   same-sex parents or their relationships and thus confronted very different questions about

19   governmental interests.  *Compare Baker*, 191 N.W.2d at 186 (discussing the institution of

20   marriage as "uniquely involving the procreation and rearing of children within a family") *with*

21   *Perry*, 671 F.3d at 1086-89 (holding that Proposition 8 did not advance the asserted interests of

22   procreation and childrearing).  While the underlying reasoning would not control this Court

23   regardless (*Mandel*, 432 U.S. at 176 (a summary dismissal "affirm[s] the judgment but not

24   necessarily the reasoning" below)), it is clear that *Baker* was decided in the context of arguments

25   about parenting that the Ninth Circuit forecloses here as a matter of law.  *Perry*, 671 F.3d at 1063;

26   *see also id.* at 1082 n.14 (ruling that the specific context and history in California rendered *Baker*

27   inapplicable to the narrower questions before that Court).

28        *Baker* also did not present the sexual orientation discrimination question squarely posed in

1   Plaintiffs' equal protection claim here.  (Compl. at ¶¶ 86-103.)  *Baker's* jurisdictional statement

2   specified that "[t]he discrimination in this case is one of gender," focusing expressly on sex

3   discrimination as the basis of the equal protection violation.  *See* Jurisdictional Statement for

4   Appellants at 16, *Baker v. Nelson*, No. 71-1027 (1972), attached as Exhibit A.  While that issue is

5   posed in this case as well (after intervening landmark doctrinal developments discussed below),

6   Plaintiffs' substantial federal claims of sexual orientation discrimination were not specifically

7   presented in *Baker* and could not be foreclosed by the summary dismissal.  *See Mandel*, 432 U.S.

8   at 176.

9          C.      **State Marriage Laws Are Not Exempt From Federal Equal Protection
                   Requirements.**

10         Additionally, *Baker* and other authorities do not, as Defendants seem to suggest, exempt

11  state marriage eligibility rules from federal guarantees of equal protection.  (Mot. at 3-4.)  Even if

12  the underlying *reasoning* of the Minnesota Supreme Court's decision in *Baker* had any relevance

13  here, the Court in no way suggested that state statutes are immune from federal constitutional

14  review, nor could they be, in light of the Supremacy Clause.  191 N.W.2d 185; U.S. Const., art.

15  VI, cl. 2.  While determinations of marital eligibility have traditionally been the province of the

16  states and not the federal Congress, such state law rules are not immune from federal

17  constitutional review.  To the contrary, federal guarantees of equal protection set a floor below

18  which no state's family law may fall.  *See*, *e.g.*, *Loving v. Virginia*, 388 U.S. 1, 7 (1967)

19  (declaring unconstitutional Virginia's statutes criminalizing interracial marriage, overruling *Pace

20  v. Alabama*, 106 U.S. 583 (1883) and noting that regardless of the state's police power over

21  marriage, the state could "not contend … that its powers to regulate marriage are unlimited

22  notwithstanding the commands of the Fourteenth Amendment … in light of *Meyer v. Nebraska*,

23  262 U.S. 390 (1923), and *Skinner v. Oklahoma*, 316 U.S. 535 (1942).").[4]

24  _____

[4]      Contrary to Defendants' claims (Mot. at 6), this case is manifestly different from
25  *Hernstadt v. Hernstadt*, 373 F.2d 316 (2d Cir. 1967).  Plaintiffs do not ask this Court to intervene
    in an individual couple's custody dispute, *id.* at 317, but rather whether the Fourteenth
26  Amendment permits a state to exclude an entire group of people from civil marriage along
    invidious lines of sexual orientation and sex discrimination.  *Cf. Loving*, 388 U.S. at 2 ("This case
27  presents a constitutional question never addressed by this Court:  whether a statutory scheme
    adopted by the State of Virginia to prevent marriages between persons solely on the basis of
28  racial classifications violates the Equal Protection and Due Process Clauses of the Fourteenth
    Amendment.").

1   **II.      EVEN IF *BAKER* WERE RELEVANT, SUBSEQUENT DEVELOPMENTS HAVE
            RENDERED IT NUGATORY.**

2

3       Even if *Baker* were relevant to the question before this Court, subsequent developments in

4   the law have vitiated the decision's limited precedential force.  When doctrinal developments

5   have occurred, a summary dismissal even on the same precise question carries diminished

6   precedential value.  *Hicks v. Miranda*, 422 U.S. 332, 344 (1975); *Perry*, 671 F.3d at 1082 n.14

7   (summary dismissals prevent lower courts from reaching different determinations on the precise

8   issues presented and necessarily decided "except when doctrinal developments indicate

9   otherwise") (internal quotation marks omitted).  In the nearly 40 years since the Supreme Court

10  summarily dismissed the *Baker* appeal, landmark developments have vastly changed the

11  constitutional landscape.  *Baker* rejected the appellants' sex discrimination claims before the

12  Supreme Court recognized that sex-based classifications require heightened scrutiny, *Frontiero v.

13  Richardson*, 411 U.S. 677, 688 (1973) (plurality opinion); before *Romer v. Evans* held that a bare

14  desire to harm gay people cannot constitute a legitimate government interest, 517 U.S. 620, 634-

15  35 (1996); and before *Lawrence v. Texas* established that lesbian and gay individuals have the

16  same liberty interest in private family relationships as heterosexuals, 539 U.S. 558, 578 (2003).[5]

17  *Cf. Smelt v. County of Orange*, 374 F. Supp. 2d 861, 873 (C.D. Cal. 2005), *aff'd in part and

18  vacated in part on other grounds by* 447 F.3d 673 (9th Cir. 2006) ("Doctrinal developments show

19  it is not reasonable to conclude the questions presented in the *Baker* jurisdictional statement

20  would still be viewed by the Supreme Court as 'unsubstantial.'"); *Garden State Equality v. Dow*,

21  2012 N.J. Super. Unpub. LEXIS 360, at *10-20 (Feb. 21, 2012 opinion on motion to reconsider),

22  attached as Exhibit B.  Additionally, a number of courts now have found that governmental

23  classifications based on sexual orientation warrant heightened judicial review under equal

24  protection analysis.  *See*, *e.g.*, *Golinski v. United States Office of Pers. Mgmt.*, 824 F. Supp. 2d

25  968, 989-90 (N.D. Cal. 2012), *appeal docketed*, Nos. 12-15388, 12-15409 (9th Cir. Feb. 24,

26  2012); *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 997 (N.D. Cal. 2011), *aff'd on other*

27  ─────────────
    [5]      *Lawrence*'s statement that it did "not involve whether the government must give formal
28  recognition to any relationship" of same-sex couples if anything signals that the ultimate question
    remains open and undecided; this statement would have been entirely unnecessary if the question
    already had been foreclosed by *Baker*.  539 U.S. at 578.

1   *grounds*, 671 F.3d 1052; *In re Balas*, 449 B.R. 567, 576-77 (C.D. Cal. Bankr. 2011).

2          Defendants make the surprising assertion that since *Baker* "there has been no substantial

3   federal question" about whether federal equal protection guarantees require any particular state to

4   allow same-sex couples to marry, and that "[n]othing in the law … has altered this."  (Mot. at 6).

5   The Ninth Circuit in fact has issued binding authority finding the opposite:  under at least some

6   circumstances, excluding same-sex couples from marriage does indeed violate federal equal

7   protection guarantees.  *Perry*, 671 F.3d at 1095.  Given the tectonic shifts in constitutional

8   jurisprudence regarding lesbians and gay men since *Baker*, and *Perry's* confirmation that *Baker*

9   does not foreclose all equal protection claims by same-sex couples seeking civil marriage—

10  particularly narrow, factually-limited claims such as those here—Plaintiffs should be permitted to

11  have their day in court.

## CONCLUSION

13         For the forgoing reasons, Defendants' motion to dismiss should be denied.

14         DATED:  June 4, 2012.

15  LAMBDA LEGAL DEFENSE AND                    CARLA CHRISTOFFERSON (*pro hac vice*)
16  EDUCATION FUND, INC.                        DAWN SESTITO (*pro hac vice*)
                                                MELANIE CRISTOL (*pro hac vice*)
17   /s/ Tara L. Borelli                        RAHI AZIZI (*pro hac vice*)
    JON W. DAVIDSON (*pro hac vice*)            O'MELVENY & MYERS LLP
18  TARA L. BORELLI (*pro hac vice*)            400 South Hope Street
    PETER C. RENN (*pro hac vice*)              Los Angeles, California  90071
19  SHELBI DAY (*pro hac vice*)
    3325 Wilshire Boulevard, Suite 1300
20  Los Angeles, California  90010

21
    KELLY H. DOVE (Nevada Bar No. 10569)
22  MAREK P. BUTE (Nevada Bar No. 09989)
    SNELL & WILMER LLP
23  3883 Howard Hughes Parkway, Suite 1100
    Las Vegas, Nevada  89169
24

25  *Attorneys for Plaintiffs*

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that I will electronically file the foregoing with the Clerk of the Court for

the United States District Court, District of Nevada by using the CM/ECF system on June 4,

2012.  All participants in the case are registered CM/ECF users, and will be served by the

CM/ECF system.

By: /s/ Jamie Farnsworth
Jamie Farnsworth
3325 Wilshire Boulevard, Suite 1300
Los Angeles, CA  90010

- 12 -