Monte N. Stewart (Nevada Bar No. 1459)
Craig G. Taylor (*pro hac vice* application pending)
**BELNAP STEWART TAYLOR & MORRIS PLLC**
12550 W. Explorer Drive, Suite 100
Boise, Idaho 83713
Tel: 208-345-3333 / Fax: 208-345-4461
Email: stewart@belnaplaw.com

D. Chris Albright (Nevada Bar No. 4904)
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT, PC**
801 South Rancho Drive, Suite D4
Las Vegas, Nevada 89106-3854
Tel: (702) 384-7111 / Fax: (702) 384-0605
Email: dca@albrightstoddard.com

*Lawyers for Intervenor-Defendant the Coalition for the Protection of Marriage*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BEVERLY SEVCIK et al., | Case No.: 2:12-cv-00578-RLH-PAL |
| Plaintiffs, | |
| vs. | |
| BRIAN SANDOVAL, etc., et al., | **1. THE COALITION'S OBJECTION TO "STIPULATED DISCOVERY PLAN AND SCHEDULING ORDER"** |
| Defendants, | |
| and | **and** |
| COALITION FOR THE PROTECTION OF MARRIAGE, | **2. APPENDIX IN SUPPORT** |
| Intervenor-Defendant. | |

1

# I. Introduction

On Friday, June 1, 2012, the plaintiffs made two filings – their opposition to the Coalition's motion to intervene (D.I. 40) and their proposed scheduling order ("PSO") (D.I. 39) (collectively "Filings"). This is the Coalition's Objection to the PSO.  We are also filing a Reply in support of the Coalition's motion to intervene. We mention that fact here for two reasons: First, the Filings share a common objective: with the Filings, the plaintiffs are attempting to kill the chance, at the very outset of this litigation, that this Court will be fully advised of the full range of societal and hence governmental interests sustaining the constitutionality of Nevada's Marriage Amendment.  Second, to fully understand the mischievous nature of the PSO, one needs to understand what we say in our Reply in support of the Coalition's motion to intervene. Accordingly, we respectfully request the Court to review that Reply before reviewing this Objection, which on some important points will only briefly summarize what the Reply addresses in full.

Here is a summary of the important points made in full in the Reply:

1. The real and ultimate issue in this case is whether sufficiently weighty and important societal and hence governmental interests sustain Nevada's Marriage Amendment – which perpetuates the man-woman meaning at the core of our marriage institution – against the plaintiffs' constitutional attack on it.

2. A number of social institutional realities ("marriage facts") comprising what is known as the social institutional argument for man-woman marriage establish that society's and hence government's interest in preserving the man-woman meaning are compelling and therefore that the Marriage Amendment can withstand constitutional attack, regardless of the level of judicial scrutiny employed.

3. The marriage facts are just that, facts, and are of a nature that they are the fit subject of Rule 702 expert witness testimony. Indeed, the only way to get these facts into the record is by way of expert testimony (in the absence of stipulation, which seems highly unlikely in this case).

4. The other ways in which a judge can create some purportedly "factual" basis on which to assess the man-woman meaning's constitutionality is by use of (i) unproven fundamental premises and/or (ii) so-called "legislative facts." But both of those ways amount, in practice, to a judge conjuring up a notion of what marriage is (or should be) on nothing other than his own worldview and personal experiences. Judges are not qualified social scientists or practitioners of related disciplines that study the social institutional realities sustaining man-woman marriage's constitutionality.

5. The plaintiffs have plainly stated their intention to present their own evidence on the institution of marriage, evidence that is contrary to the marriage facts that the Coalition has already detailed and is ready, willing, and able to prove with admissible evidence.

6. The Nevada Attorney General's Office ("AGO") rather clearly has no intention to marshal the broad range of expert testimony needed to defend fully the Marriage Amendment's constitutionality or otherwise to get the marriage facts before this Court in admissible form. The other three government defendants, the clerks, have clearly indicated that they will be making no defense of the Marriage Amendment.

7. The Filings' purpose and effect is to prevent the Coalition – as the only party ready, willing, and able to present to this Court in admissible form the full range of evidence sustaining the constitutionality of the Marriage Amendment – from doing just that. If the

Coalition does not (because it is not allowed to) perform that work, that work will not get done.

## II. Argument

**1. The PSO should be rejected out of hand because it was done without the knowledge or input of the Coalition and, indeed, was done in hot haste exactly for the purpose of keeping the Coalition out of deliberations.**

The plaintiffs drafted the PSO and orchestrated the stipulation of the "government defendants" to it in hot haste, without ever giving notice of any kind to the Coalition's counsel. This was so even though the Coalition's motion to intervene was already on file (and was, indeed, the first substantive filing by any defendant).  This was so even though plaintiffs drafted the PSO with the purpose and intended effect of it binding the Coalition.[1]  The Coalition's counsel first became aware of the PSO only when it was filed.  Appendix 1 ("App.").

In these circumstances, this Court should reject the PSO out of hand and send the parties – all the parties, including the Coalition – back to the drawing board to come up with, if possible, a stipulated scheduling order and, if not that, at least a narrowing of the scheduling issues in dispute.

**2. Any genuinely fair and sensible scheduling order in this case will allow adequate time for the parties to marshal and test (i) the broad range of expert testimony needed to defend fully the Marriage Amendment's constitutionality and (ii) any rebuttal expert testimony.**

The just resolution of this case requires that the parties be able through discovery to marshal and test two categories of expert testimony:  (i) that which the Coalition will be gathering in support of the constitutionality of the Marriage Amendment and (ii) that which the plaintiffs will be presenting in opposition.  (The plaintiffs have already plainly stated their intent

---

[1]  The plaintiffs' Opposition (D.I. 40) to our motion to intervene concedes that the Coalition should be a permissive intervenor but only under stringent proposed limitations – one being that the Coalition be bound by the PSO.

to provide evidence to this Court on the institution of marriage that counters our marriage facts.) Without adequate time for the parties to perform that work, there can be no just resolution of this case because there will be no adequate basis on which to assess society's interests sustaining the constitutionality of man-woman marriage.

For the Coalition – the only defendant willing to do the work – to marshal and prepare for their depositions the numerous experts required to cover all facets of the marriage facts (that is to disclose experts and expert reports), it will need at least six months, for several good reasons. One, we will be dealing with at least six consulting experts and at least an equal number of retained testifying experts.  Two, prior to the filing of the Complaint we had no warning of the need to be about marshalling expert testimony, and most all our time since then, necessarily, has been devoted to fighting the intervention battle.  Accordingly, although we have a list of about two dozen potential expert witnesses, we have been able to contact none of them yet and therefore will be starting from scratch.  Three, although the Coalition's legal team has deep experience relative to litigation of the marriage issue, that team is much, much smaller than plaintiffs' legal team; the Coalition's legal team can be spread only so thin.  App. 1-2.

There is another aspect of expert testimony that bears on deadlines in a sensible scheduling order.  Some important parts of the marriage facts are evidenced by the work-product of academics, few if any of whom may be willing to testify as an expert retained by the Coalition.  That is because on most American campuses the pro-genderless marriage ideology is so pervasive and so hotly embraced that even academics personally sympathetic to the Coalition's cause are literally intimidated into silence.  Yet if their testimony is relevant and important to the issue in this case, this Court is entitled to that testimony.  After all, "'the public . . . has a right to every man's evidence,'" except for those persons protected by a constitutional,

common-law, or statutory privilege," and there is no privilege for expert testimony. *Kaufman v. Edelstein*, 539 F.2d 811, 820 (2nd Cir. 1976). Rule 45(c)(3)(B), FRCP, provides the mechanism and safeguards for getting by deposition the testimony of an unretained expert. Use of that rule to actually get such testimony is a burdensome endeavor, and we intend to use it only in the most necessary situations, but we do intend to use it when necessary. It is not possible right now to assess the impact of this reality on the completion of discovery, but the reality is just that, a reality, and merits noting in this context. App. 2-3.

Accordingly, no fair scheduling order will put a deadline on the disclosure of experts and expert reports that is any sooner than six months after this Court enters its order granting the Coalition's motion to intervene – and disclosure of rebuttal experts and expert reports two months later. A fair scheduling order will also allow an additional four months thereafter for the depositions of the retained experts. That means a discovery cut-off of about twelve months from the Coalition becoming a party by intervention. This case could be to trial – one held on a fair basis – next summer.

In assessing the fairness of any proposed scheduling order, it is important to keep in mind how the Coalition stands vis-à-vis the other parties. The plaintiffs' legal team is exceedingly large and very well funded and has had many, many months, even years, to prepare for this litigation, including marshalling of expert testimony. The AGO has no intent to marshal expert testimony (or, it appears, little if any other admissible evidence of any kind), and the clerks have declined to mount a defense of the Marriage Amendment.

Finally, in assessing the fairness of any proposed scheduling order, it seems right that there be no rush to judgment on man-woman marriage, a vital social institution that has served

humankind so well for millennia.  That institution, represented here by Nevada's Marriage

Amendment, deserves better.

**3.  The PSO is neither fair nor sensible because its purpose and intended effect is to prevent any defendant, as a practical matter, from marshaling even a minor part of the expert testimony essential to the just resolution of this action.**

The PSO provides that within just a few weeks the parties face a deadline to file summary

judgment motions – specifically, 21 days from when this Court rules on the pending motion to

dismiss and the pending motion to intervene.  (For ease of reference, the PSO is attached in the

Appendix.) The PSO then gives opposing parties (read "the Coalition") just 60 days for "expert

discovery," which coincides with the 60-day deadline for filing an opposition to the summary

judgment motion.  That "expert discovery" apparently includes deposing experts whose work-

product is used in a summary judgment motion and scrambling to find rebuttal experts.  In any

event, the clear intent here is to preclude any Rule 56(f) motion.  If this Court denies the motion

for summary judgment, then the final discovery cut-off is 90 days later.  The "disclosure of

experts and expert reports" deadline, however, is just 30 days after that denial and the

"disclosure of rebuttal experts and their reports" deadline is a mere 30 days later.  That leaves 30

days before the discovery cut-off to do all the depositions.

All this means that "expert discovery" of any meaningful kind is limited to a 60-day

window beginning in just a few weeks and then a 30-day window at the very end of discovery.

The PSO's content makes our case that its purpose and intended effect is to prevent the

Coalition – as the only party ready, willing, and able to present to this Court in admissible form

the full range of evidence sustaining the constitutionality of the Marriage Amendment and to

rebut the plaintiffs' contrary evidence – from doing just that.

### III. Conclusion.

In light of all the foregoing, we respectfully request that this Court reject the PSO and either (i) send *all* the parties to the drawing board to come up with, if possible, a stipulated scheduling order and, if not that, at least a narrowing of the scheduling issues in dispute or (ii) enter a scheduling order with these deadlines:  disclosure of experts and their reports, six months thereafter; disclosure of rebuttal experts and their reports, two months after that; discovery cut-off, four months after that.

June 8, 2012

Monte Neil Stewart (Nevada Bar No. 1459)

**APPENDIX IN SUPPORT OF**

**OBJECTION TO PROPOSED SCHEDULING ORDER**

**<u>Table of Contents</u>**

Second Supplemental Affidavit of Monte Neil Stewart ..................................................1

Copy of Proposed Scheduling Order.......................................................4

## SECOND SUPPLEMENTAL AFFIDAVIT OF MONTE NEIL STEWART

State of Idaho             )
                                ) ss
County of Ada             )

I, Monte Neil Stewart, being first duly sworn testify of my own personal knowledge that:

1. I am one of the lawyers representing the Coalition for the Protection of Marriage ("Coalition") relative to *Sevcik et al. v. Sandoval, etc., et al.*, Case No.: 2:12-cv-00578-RLH-PAL, United States District Court for the District of Nevada ("this case").

2. This affidavit (A) supplements (i) my affidavit filed in this action as part of the Appendix in Support of the Coalition's Motion to Intervene (D.I. 30; App. 18-33) and (ii) my supplemental affidavit filed in this action as part of the Supplement Appendix in Support of the Coalition's Reply in Support of the Coalition's Motion to Intervene (filed simultaneously with this filing) and (B) incorporates here in full the contents of those two affidavits.

3. Since I became the Coalition's lawyer less than a month ago, most all my time in this case has been devoted to fighting the intervention battle. I have, however, been able to devote some time to analyzing potential expert testimony in this case and in the process have come up with a list of about two dozen experts that, in my judgment, should be approached on behalf of the Coalition. Because of the work on the intervention issue, the Coalition's legal team has not been able to begin that other task. We will begin that task in the coming days, even before the Court rules in this case on whether the Coalition will have any meaningful role in discovery, fact development, and evidence presentation.

4. I anticipate that, in marshaling the full range of marriage facts supportive of the constitutionality of the Marriage Amendment, we will be working with at least six consulting experts and an equal number of experts retained to testify.

5. Prior to my becoming the Coalition's lawyer in this case less than a month ago, neither I nor any other member of the legal team nor the Coalition itself had any warning about the need to perform the tasks specified in the previous two paragraphs.

6. The Coalition's legal team has deep experience relative to litigation of the marriage issue but is relatively small. For a number of important tasks, such as depositions of experts, I should take the lead in doing them.

7. I know through my prior work on the marriage issue that some important parts of the marriage facts are evidenced by the work-product of academics; that few if any of those academics may be willing to testify as an expert retained by the Coalition; and that this is so because on most American campuses the pro-genderless marriage ideology is so pervasive and so hotly embraced that even academics personally sympathetic to the Coalition's cause are literally intimidated into silence.  I have researched the process under Rule 45(c)(3)(B), FRCP, for getting by deposition the testimony of an unretained expert and have determined that use of that rule to actually get such testimony is a burdensome endeavor; accordingly, we intend to use the rule only in the most necessary

situations, but we do intend to use it when necessary.  It is not possible right now to

assess the impact of this reality on the completion of discovery.

SUBSCRIBED AND SWORN TO before me June 8th, 2012.

Notary Public

Residing at Boise, ID

My Commission Expires: 12/21/13

3

1    JON W. DAVIDSON (*pro hac vice*)
     TARA L. BORELLI (*pro hac vice*)
2    PETER C. RENN (*pro hac vice*)
     SHELBI DAY (*pro hac vice*)
3    LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
     3325 Wilshire Boulevard, Suite 1300
4    Los Angeles, California 90010
     Email: jdavidson@lambdalegal.org
5           tborelli@lambdalegal.org
            prenn@lambdalegal.org
6           sday@lambdalegal.org
     Tel: 213.382.7600 | Fax: 213.351.6050
7
     CARLA CHRISTOFFERSON (*pro hac vice*)
8    DAWN SESTITO (*pro hac vice*)
     MELANIE CRISTOL (*pro hac vice*)
9    RAHI AZIZI (*pro hac vice*)
     O'MELVENY & MYERS LLP
10   400 South Hope Street
     Los Angeles, California 90071
11   Email: cchristofferson@omm.com
            dsestito@omm.com
12          mcristol@omm.com
            razizi@omm.com
13   Tel: 213.430.6000 | Fax: 213.430.6407
14   KELLY H. DOVE (Nevada Bar No. 10569)
     MAREK P. BUTE (Nevada Bar No. 09989)
15   SNELL & WILMER LLP
     3883 Howard Hughes Parkway, Suite 1100
16   Las Vegas, Nevada 89169
     Email: kdove@swlaw.com
17          mbute@swlaw.com
     Tel: 702.784.5200 | Fax: 702.784.5252
18
     *Attorneys for Plaintiffs*
19
20              UNITED STATES DISTRICT COURT
21                  DISTRICT OF NEVADA
22   BEVERLY SEVCIK and MARY            No. 2:12-CV-00578-RCJ-PAL
     BARANOVICH; ANTIOCO CARRILLO
23   and THEODORE SMALL; KAREN          **STIPULATED DISCOVERY PLAN AND**
     GOODY and KAREN VIBE; FLETCHER     **SCHEDULING ORDER**
24   WHITWELL and GREG FLAMER;
     MIKYLA MILLER and KATRINA          **SPECIAL SCHEDULING REVIEW**
25   MILLER; ADELE TERRANOVA and        **REQUESTED**
     TARA NEWBERRY; CAREN
26   CAFFERATA-JENKINS and FARRELL
     CAFFERATA-JENKINS; and MEGAN
27   LANZ and SARA GEIGER,
28                 Plaintiffs,

4

1    v.

2    BRIAN SANDOVAL, in his official capacity
     as Governor of the State of Nevada; DIANA
3    ALBA, in her official capacity as Clerk for
     Clark County; AMY HARVEY, in her
4    official capacity as Clerk for Washoe
     County; and ALAN GLOVER, in his official
5    capacity as Clerk-Recorder for Carson City,

6               Defendants.

7

8             **SPECIAL SCHEDULING REVIEW REQUESTED**

9         1.    <u>Special Scheduling Review Is Requested</u>.  The parties wish to proceed

10   expeditiously to the merits of this matter and agree, as described further below, that if the pending

11   motion to dismiss filed by Defendant Brian Sandoval and joined by Defendant Alan Glover is

12   denied, any party wishing to file a motion for summary judgment will do so within 21 days

13   following any denial of the pending motion to dismiss, or within 21 days following the ruling on

14   the pending motion to intervene, whichever is later in time.  The parties further agree that in the

15   event that all motions for summary judgment are denied by the Court, the parties will proceed

16   based upon the schedule described below, which is contingent on the date of the Court's

17   disposition of the motions for summary judgment.  Once dates certain are known, Plaintiffs will

18   file an updated discovery plan and scheduling order within five days.  Because the proposed

19   schedule may potentially cause the discovery cut-off to occur more than 180 days from the date

20   that the first defendant appeared, the parties respectfully request special scheduling review of

21   their proposed schedule.

22         2.    <u>Meeting</u>.  Pursuant to Fed. R. Civ. P. 26(f) and LR 26-1(a), a meeting was held on

23   May 24, 2012, and was attended by Tara Borelli, Peter Renn, Melanie Cristol and Kelly Dove on

24   behalf of all Plaintiffs; and C. Wayne Howle for Defendant Brian Sandoval; Herbert B. Kaplan

25   for Defendant Amy Harvey; and Randal R. Munn for Defendant Alan Glover.  Plaintiffs' counsel

26   conferred separately with Michael Foley, counsel for Defendant Diana Alba.

27         3.    <u>Discovery Plan</u>.  The parties jointly propose to the Court the following discovery

28   plan:

- 2 -

1               (a)     Initial Disclosures. The parties have until June 7, 2012, 14 days after the

2   LR 26-1(d) and Fed. R. Civ. P. 26(f) meeting was held, to serve their initial disclosures on all

3   parties pursuant to Fed. R. Civ. P. 26(a)(1).

4               (b)     Subject of Discovery. Plaintiffs are eight same-sex couples who allege that

5   Defendants' exclusion of them from the ability to marry, or to have a valid marriage from another

6   jurisdiction recognized as a marriage, violates the guarantees of equal protection based on sexual

7   orientation and sex under the Fourteenth Amendment to the United States Constitution. To the

8   extent that any discovery occurs before the filing of cross-motions for summary judgment, the

9   parties anticipate that the following issues may be subject to discovery: the factual bases of

10   Plaintiffs' claims, any governmental interests that any Defendant may advance as a rationale for

11   the exclusion of Plaintiffs from marriage, and any other defenses that Defendants may raise.

12               (c)     Motions for Summary Judgment. As noted above, if the pending motion to

13   dismiss is denied, any party wishing to file a motion for summary judgment shall do so within 21

14   days after a denial of the pending motion to dismiss, or 21 days following the ruling on the

15   pending motion to intervene, whichever is later in time. The parties also respectfully request that

16   any responsive opposition brief be due 60 days after the filing of the motion, so as to permit the

17   standard period of time provided by LR 26-1(e)(3) for expert discovery, if any is necessary. The

18   parties agree that reply briefs may be filed within 30 days after opposition briefs are due.

19               (d)     Other Dispositive Motions. In the event that all motions for summary

20   judgment filed pursuant to paragraph 3(c) are denied, the parties shall have until 30 days after the

21   discovery cut-off date described below to file any other dispositive motions. This does not

22   exceed the limit of 30 days following the discovery cut-off date that LR 26-1(e)(4) presumptively

23   sets for filing dispositive motions.

24               (e)     Discovery Cut-Off Dates. In the event that all motions for summary

25   judgment filed pursuant to paragraph 3(c) are denied, the parties agree that the discovery cut-off

26   date will be 90 days from the date of the Court's last disposition of any party's motion for

27   summary judgment.

28               (f)     Fed. R. Civ. P. 26(a)(2) Disclosures (Experts). Disclosure of experts shall

- 3 -

1    proceed according to LR 26-1(e)(3), which provides that:

2                   (1)    The disclosure of experts and expert reports shall occur 60 days

3    before the discovery cut-off date; and

4                   (2)    The disclosure of rebuttal experts and their reports shall occur 30

5    days before the discovery cut-off date.

6        4.    Other items.

7            (a)    Amending the Pleadings and Adding Parties.  The parties have until 75

8    days before the discovery cut-off date to file any motion to amend the pleadings or to add parties.

9            (b)    Interim Status Report.  The undersigned counsel certify that they have read

10   LR 26-3 and that the parties shall file the interim status report required by LR 26-3 not later than

11   60 days before the discovery cut-off date.

12           (c)    Settlement.  The issue of whether settlement discussion is appropriate was

13   addressed, and given the nature of the case, none of the parties believes that this case is amenable

14   to a resolution through settlement.

15           (d)    Pretrial Order.  The pretrial order shall be filed by 30 days after the date set

16   for filing dispositive motions in the case.  This case is suspended if the dispositive motions are

17   timely filed.  The disclosures required by FRCP 26(a)(3) shall be made in the joint pretrial order.

18           (e)    Court Conference.  The parties do not request a conference with the Court

19   before entry of the scheduling order.

20           (f)    Later Appearing Parties.  If an additional defendant should appear,

21   Plaintiffs shall serve a copy of this discovery plan and scheduling order within five days after

22   such defendant becomes a party to the case.  This discovery plan and scheduling order shall apply

23   to such later-appearing parties, unless the Court, on motion and for good cause shown, orders

24   otherwise.

25           (g)    Extension or Modification of the Discovery Plan and Scheduling Order.

26   LR 26-4 governs modifications or extensions of this discovery plan and scheduling order.  Any

27   stipulation or motion must be made not later than 21 days before the expiration of the subject

28   deadline and comply fully with LR 26-4.

- 4 -

1         (h)(1)  Clawback Agreement.  In the event that any party (the "Discloser")

2   produces material or documents without intending to waive a claim of privilege or confidentiality,

3   the Discloser does not waive any claim of privilege or confidentiality if, within a reasonable

4   amount of time after the Discloser actually discovers that such material or documents were

5   produced, the Discloser notifies all other parties (the "Recipient(s)") of the inadvertent disclosure

6   of privileged or confidential items, identifying the material or documents produced and stating the

7   privilege or confidentiality provision asserted.  Mere failure to diligently screen documents before

8   producing them does not waive a claim of privilege or confidentiality.

9         (h)(2)  If the Discloser asserts that it inadvertently produced privileged or

10  confidential items in accordance with this Claw Back Agreement, the Recipient(s) must return the

11  specified material or documents and any copies within ten days of the notification.  The

12  Recipient(s) must further permanently destroy any electronic copies of such specified material or

13  documents and affirm in writing to counsel for the Discloser of such destruction.

14        (h)(3)  In the event that the Recipient(s) contends the documents are not subject to

15  privilege or confidentiality as asserted by the Discloser in accordance with this Claw Back

16  Agreement, the Recipient(s) may, following the return and destruction described in paragraph

17  (h)(2) above, challenge the privilege claim through a motion to compel or other pleading with the

18  Court in which the litigation is currently pending.  The parties agree that any review of items by

19  the judge shall be an in camera review.

20        (h)(4)  Should the Recipient(s) not challenge the Discloser's claim of privilege or

21  confidentiality, or should the presiding judge determine that the documents are in fact subject to

22  privilege or confidentiality, the documents, or information contained therein or derived therefrom,

23  may not be used in the litigation or against the Discloser in any future litigation or arbitration

24  brought by the Recipient(s).  Nothing contained within this Claw Back Agreement shall be

25  deemed to waive any objection that any party may wish to assert under applicable state or federal

26  law.

27        (i) Privilege.  No party by virtue of this agreement waives any claim of privilege or

28  right to seek a protective order on grounds of privilege.

- 5 -

1    Dated:  June 1, 2012

2    LAMBDA LEGAL DEFENSE AND         CARLA CHRISTOFFERSON (*pro hac vice*)
      EDUCATION FUND, INC.                 DAWN SESTITO (*pro hac vice*)

3                                      MELANIE CRISTOL (*pro hac vice*)
      /s/ Tara L. Borelli                        RAHI AZIZI (*pro hac vice*)

4    JON W. DAVIDSON (*pro hac vice*)         O'MELVENY & MYERS LLP
      TARA L. BORELLI (*pro hac vice*)           400 South Hope Street

5    PETER C. RENN (*pro hac vice*)            Los Angeles, California  90071
      SHELBI DAY (*pro hac vice*)

6    3325 Wilshire Boulevard, Suite 1300
      Los Angeles, California  90010

7

8    KELLY H. DOVE
      MAREK P. BUTE

9    SNELL & WILMER LLP
      3883 Howard Hughes Parkway, Suite 1100
      Las Vegas, Nevada  89169

10

11    *Attorneys for Plaintiffs*

12    Dated:  June 1, 2012                   Dated:  June 1, 2012

13    CATHERINE CORTEZ MASTO          NEIL ROMBARDO
      Nevada Attorney General              District Attorney

14

15    /s/ C. Wayne Howle                  /s/ Randal R. Munn
      C. WAYNE HOWLE                  RANDAL R. MUNN

16    Solicitor General                     Chief Deputy District Attorney
      100 N. Carson St.                   885 E. Musser St. Ste. 2030

17    Carson City, NV 89701               Carson City, NV 89701

18    *Attorneys for Defendant Brian Sandoval*      *Attorneys for Defendant Alan Glover*

19    Dated:  June 1, 2012                   Dated:  June 1, 2012

20    RICHARD A. GAMMICK            STEVEN B. WOLFSON
      District Attorney                    District Attorney

21

22    /s/ Herbert B. Kaplan                /s/ Michael Foley
      HERBERT B. KAPLAN             MICHAEL FOLEY

23    Deputy District Attorney             Deputy District Attorney
      P. O. Box 11130                    500 So. Grand Central Pkwy, Fifth Floor
      Reno, NV 89520-3083              Las Vegas, NV 89155

24

25    *Attorneys for Defendant Amy Harvey*        *Attorneys for Defendant Diana Alba*

26

27

28

1

## <u>ORDER</u>

2 **IT IS SO ORDERED.**

3

4 Dated: _____, 2012.

5

6 _____
UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that I will electronically file the foregoing with the Clerk of the Court for

4    the United States District Court, District of Nevada by using the CM/ECF system on June 1,

5    2012.  All participants in the case are registered CM/ECF users, and will be served by the

6    CM/ECF system.

7

8                              By: /s/ Jamie Farnsworth
                                  Jamie Farnsworth
9                                 3325 Wilshire Boulevard, Suite 1300
                                  Los Angeles, CA  90010
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2012, the foregoing document was filed with the Clerk of

the Court for the United States Court, District of Nevada by using the CM/ECF system on

June 8, 2012.  The following parties received copies electronically:

Jon W. Davidson – jdavidson@lambdalegal.org
Tara L. Borelli – tborelli@lambdalegal.org
Peter C. Renn – prenn@lambdalegal.org
Shelbi Day - sday@lambdalegal.org
Carla Christofferson – cchristofferson@omm.com
Dawn Sestito – dsestito@omm.com
Melanie Cristol – mcristol@omm.com
Rahi Azizi – razizi@omm.com
Kelly H. Dove - kdove@swlaw.com
Marek P. Bute – mbute@swlaw.com
C. Wayne Howle – whowle@ag.nv.gov
Michael Foley – michael.foley@ccdanv.com
Herbert Kaplan - hkaplan@da.washoecounty.us
Randal Munn – rmunn@carson.org

/s/Monte N. Stewart
Monte N. Stewart